## JACOB v. PENNSYLVANIA R. R.

### No. 11628.

United States Court of Appeals,
Sixth Circuit.

April 4, 1953.

Augustus Beall, Jr., and George E. Whitman, Cincinnati, Ohio (Hoover, Beall, Whitman & Eichel, Cincinnati, Ohio, of counsel), for appellant.

William A. McKenzie, Cincinnati, Ohio (Graydon, Head & Ritchey, Cincinnati, Ohio, of counsel), for appellee.

Before SIMONS, Chief Judge, and MARTIN and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

Appellant seeks review of an order of the district court dismissing her complaint on the ground that it did not state a cause of action.

The complaint set forth that appellant's decedent, William H. Jacob, was at the time of his death, an employee of the Railway Express Agency, Inc., and that, on August 23, 1947, he was riding in an express car, in the performance of his duties as an express messenger on a train of appellee, Pennsylvania Railroad, en route between Chicago, Illinois, and Cincinnati, Ohio. The complaint further set forth that on that day, it was extremely hot, the temperature having risen to 90°; that, when the train arrived at Hagerstown, Indiana, the railroad company was informed that Mr. Jacob was ill; that thereafter, the train stopped at Richmond, Indiana, when he was found to be in a critical condition; that the railroad company did nothing to obtain medical attention for him there but left him in the car and proceeded to Eaton, Ohio, where it was found that he was lying unconscious on the floor of the express car. Nothing was done here, however, to obtain medical attention, and the train proceeded on with Mr. Jacob in an unconscious condition until it reached Hamilton, Ohio, where, two hours after appellee railroad became aware of Mr. Jacob's condition, he was removed to a hospital, and shortly thereafter, died of heat prostration.

Appellee in her complaint alleged that the death of decedent was due to the negligence of the appellee in its complete failure to fulfil its duty toward the deceased, and in its wanton disregard of the decedent's welfare in failing for several hours after his illness was discovered to obtain medical attention for him, or taking any steps whatsoever for the preservation of his life.

Upon the filing of appellant's complaint, appellee filed a motion for a summary judgment on the ground that the complaint failed to state a claim against the railroad company upon which relief could be granted, and in support of its motion, filed a copy of a contract between the Pennsylvania Railroad and the Railway Express Agency, Inc., in which it was provided that:

"Article VII.

"As between the Rail Company and the Express Company, the Express Company shall be liable:

\*　　\*　　\*　　\*　　\*　　\*

"(b) For any and all injury to, or death of, its agents, or employees while engaged in its business on any of the lines or premises covered by this agreement;

\*　　\*　　\*　　\*　　\*　　\*

"The Express Company shall indemnify and save harmless the Rail Company or any agent or employee of the Rail Company against all claims, demands, suits, and actions whatsoever, including expense of litigation, that may be begun against any of the same on account of any claim arising or growing out of liability assumed by the Express Company under this Article, whether in law or in equity or before any compensation board, tribunal, or court whatsoever."

It is contended by appellant that the Pennsylvania Railroad owed the same duty to appellant's decedent as it did to fare paying passengers; that Mr. Jacob was entitled to the same measure of care from the railroad as an ordinary passenger for hire, and that, when the railroad had knowledge of his illness and his need for medical attention, it was its duty to give him such reasonable attention as the circumstances permitted; and that, since he was too ill to remain on the train with safety, there was a duty to remove him and place him in the proper custody for such care, which the railroad negligently failed to perform; that it is liable in damages for such negligent conduct; and that the court erred in granting the motion for a summary judgment.

The order dismissing the complaint did not state the grounds upon which it was

based. However, on this appeal, appellee contends for affirmance of the judgment on the ground that the railroad was relieved of liability because of the provisions of the foregoing contract; that the decedent was not a passenger for hire, and, as such, was entitled only to his common law right not to be injured by another; and that, assuming decedent was a passenger for hire, appellant's complaint failed to allege a breach of the contract of carriage.

In support of its argument, appellee relies upon the authority of Baltimore & Ohio Southwestern Railway Co. v. Voigt, 176 U.S. 498, 20 S.Ct. 385, 392, 44 L.Ed. 560. In that case, it appeared that there was an operating agreement between the express company and the railroad company in which the express company agreed to hold the railroad harmless from liability for all claims of the express company's employees. The railway express messenger who sought damages for negligence from the railroad company had entered into an agreement to relieve the express company from liability for injuries, and also to hold the railroad company, with which the express company had the operating agreement, harmless from all liability. Mr. Justice Shiras, speaking for the court, held that the express messenger was not a passenger; that he was not constrained to enter into the contract whereby the railroad company was exonerated from liability to him, but entered into the agreement freely and voluntarily, and obtained the benefit thereof by securing his appointment as such messenger; that such a contract did not contravene public policy, and that he was not entitled to maintain an action against the railroad company to recover for damages sustained as a result of the negligence of the company. The case was, however, distinguished by the court from a number of cases holding that postal clerks in the employ of the government, and who paid no fare, were entitled to the rights of ordinary passengers for hire. The court, in this regard, declared that there was an obvious distinction between a postal clerk and the case of the express messenger in the Voigt case in that the messenger had agreed to the contract between the express company and the rail-

road company, exempting the latter from liability, but that no case had been cited in which a postal clerk voluntarily had entered into such an agreement. "To make the cases analogous", the court said, "it should be made to appear that the government, in contracting with the railroad company to carry the mails, stipulated that the railroad company should be exempted from liability to the postal clerk, and that the latter, in consideration of securing his position, had concurred in releasing the railroad company." But in the instant case, although there was a contract between the railroad company and the express company in which it was agreed that, as between the railroad company and the express company, the express company should be liable for all injury to or death of its agents or employees while engaged in its business on the railroad, nevertheless, there was no agreement on the part of Mr. Jacob to exempt the railroad from any liability for injuries resulting from its negligence; and, in this, the distinction pointed out by Mr. Justice Shiras gives support to the contention of appellant that here, the railroad was not relieved of liability through the contract, as that contract was only a contract between the railroad company and the express company, which had no binding force over any rights of Mr. Jacob.

In this connection, it is interesting to note that the opinion of the Supreme Court in the Voigt case was rendered on certified questions from this circuit, and that Judge Taft, later Chief Justice Taft, speaking for this court, there held that the contract by which the employee had released the railroad from liability was void as being against public policy. Voight v. Baltimore & Ohio S. W. Ry. Co., C.C., 79 F. 561.

■ The case before us was commenced in the Court of Common Pleas of Hamilton County, Ohio, and thereafter removed to the federal court. The conduct of which appellant complains occurred in the State of Ohio, and Ohio law, therefore, governs this case. The controlling authority appears to be the case of The Pittsburgh Cincinnati, Chicago & St. Louis Railway Co. v. Kinney, 95 Ohio St. 64, 115 N.E. 505, 510, L.R.A.1917D, 641, in which the Supreme

Court of Ohio held that a contract between an employer and an employee, which nullifies or lessens any legal duty which the employer owes to the employee relative to safeguarding the life, limb, safety, health, or welfare of the latter, is contrary to public policy and, therefore, null and void. In that case, a woman who was employed as a car cleaner had entered into a contract of employment in writing with the Pullman Company, in which it was provided that, in consideration of her employment and payment of wages by the Pullman Company, she would assume all risks of accident or casualty incident to such employment, and would relieve the Pullman Company from all liability therefor. The contract further recited that the Pullman Company had a contract of carriage with the railway company whereby the Pullman Company had promised and agreed to protect the railroad company from any and all liability arising out of the negligence of the defendant railway company, or its employees, in causing death or injuries to any of the employees of the Pullman Company. The contract between the employee and the Pullman Company further recited the substantial terms of such release in the contract between the railway company and the Pullman Company, and contained the provision that the Pullman Company might assign its release on the part of the employee to any railroad company carrying the Pullman Company's cars. The court held that, as between the employee and the Pullman Company, the contract, in so far as it undertook to release the Pullman Company or any railroad company from negligent acts causing death or injury to the employee, was invalid because it was contrary to public policy. The Kinney case above discussed is almost identical on its facts to the case of Baltimore & Ohio Southwestern Railway Co. v. Voigt, supra, but, in arriving at a diametrically opposite conclusion, Justice Wanamaker, speaking for the Supreme Court of Ohio in the Kinney case, declared that the "sort of leopard-spot public policy which Justice Shiras attempts to lay down in the Voigt Case is wholly indefensible and unconscionable."

■ From the foregoing, it appears that not only is the right of appellant to maintain her action in the instant case sustained by the authority of the Voigt case on the ground that Mr. Jacob himself entered into no contract relieving the railroad from liability, but, moreover, under the controlling Ohio authority of the Kinney case, the right to maintain such action is clearly and forcefully declared, even though the employee had entered into the agreement relieving the railroad from liability, inasmuch as, under the law of the State of Ohio, such a contract would be void as against public policy.

We turn, then, to the question whether Mr. Jacob, in his capacity as an express messenger riding on appellee's train, was to be regarded as a passenger or a licensee, and the nature of the duty of care owed to him by the railroad.

■ The general rule is that an express agent, permitted to ride under a contract without payment of fare, is generally regarded as an ordinary passenger. In Voight v. Baltimore & Ohio S. W. Ry. Co., C.C., 79 F. 561, 562, Judge Taft said: "It seems to be well settled that an express messenger, though carried in a special car, when carried under a contract with a railroad company made by the express company for the transportation of express matter in his charge, is a passenger for hire." In the leading case of Davis v. Chesapeake & Ohio Ry. Co., 122 Ky. 528, 92 S.W. 339, 340, 5 L.R.A.,N.S., 458, 121 Am.St.Rep. 481, 12 Ann.Cas. 723, it was said:

"While there is some conflict in the authorities on the question, we are of the opinion that the courts which hold that an express messenger though carried in a special car, under a contract with the express company for transportation of express matter, announce the correct doctrine in holding that they are passengers for hire. The sum which the express company pays the railroad company for conducting its express business, on its cars, over its line of railway is necessarily, in part, for the transportation of the express messenger. The express messenger is

not a trespasser, because he is being transported by the railroad company under a contract and for the same reason he is not a licensee. He is an employe of the express company and not of the railroad company. If he is not a trespasser or a licensee, or an employe of the railroad company, he must necessarily be a passenger. While the railroad company could not be compelled to enter into a contract by which it would receive into the express car the messenger of the express company and thus transport him, still when he does agree to, and does receive him on that car for transportation, though his business is to look after express matter, he is being transported for compensation, hence, as a passenger for hire. Fordyce v. Jackson, 56 Ark. 594, 20 S.W. 628, [528] 597; Blair v. [Erie] Railroad Co., 66 N.Y. 313, 23 Am.Rep. 55; Brewer v. [N. Y. L. E. & W.] Railroad Co., 124 N.Y. 59, 26 N.E. 324, 11 L.R.A. 483, 21 Am.St.Rep. 647; Kenney v. [New York Cent. & H.] Railroad Co., 125 N.Y. 422, 26 N.E. 626; Pennsylvania Co. v. Woodworth, 26 Ohio St. 585; [Kentucky Central] Railroad Co. v. Thomas' Adm'r, 79 Ky. [160] 169 [2 Ky.Law Rep. 114], 42 Am.Rep. 208; Jones v. [St. Louis S. W.] Railway Co., 125 Mo. 666, 28 S.W. 883, 26 L.R.A. 718, 46 Am.St.Rep. 514; Yeomans v. [Contra Costa Steam] Navigation Co., 44 Cal. 71; [Cleveland, C., C. & St. L.] Railroad Co. v. Ketcham, 133 Ind. 346, 33 N.E. 116, 19 L.R.A. 339, 36 Am.St.Rep. 550; Chamberlain v. [Milwaukee & M.] Railroad Co., 11 Wis. 238; [Gulf, C. & S. F.] Railroad Co. v. Wilson, 79 Tex. 371, 15 S.W. 280, 11 L.R.A. 486, 23 Am.St. Rep. 345."

In Hutchison on Carriers, Section 564, it is said: "It seems that if the person who is injured by the negligence of the employees of the carrier, is lawfully upon its conveyance, under a contract which does not make him an employee or servant of the company, he will be entitled to the same care and diligence for his safety as one who is strictly a passenger. Thus, where one was upon a train as an express mes-

senger, carrying express freight, under contract with the company, by which he was entitled to be carried, without a distinct price for his passage, and was injured by the negligence of the company's agents in the management of the train, or in putting obstructions in its way, it was held that such messenger was entitled to the same care and circumspection on the part of the company and its agents in his carriage as if he had been traveling upon the train as a passenger, who had paid a distinct price for his transportation." In 3 Thompson on Negligence, Section 2651, it is said: "In respect of the measure of duty which the carrier owes him and his right of recovery for an injury happening through the negligence of the carrier's servants, an express messenger stands on the same footing as a U. S. postal clerk. He is on the carrier's vehicle lawfully, and for a consideration paid by the company, and his legal rights are therefore those of a passenger for hire." In Section 1578, vol. 4, Elliott on Railroads, it is said: "The courts have held the relation of carrier and passenger to exist in cases of mail agents, or postal clerks, and a similar rule is declared as to express messengers."

■■ As submitted by counsel for appellee, if the duty to an express messenger by the carrier is the same as the duty by it to a passenger, then the carrier is required to exercise that same care for the safety and welfare of the messenger who becomes sick on the train as it would for a fare paying passenger. It follows that if the carrier's servants know, or have notice of facts requiring them, in the exercise of reasonable prudence, to know that a passenger is sick or in need of attention, and unable to care for himself during his journey, the carrier owes him an added duty resulting from the change of situation. It is the duty of the carrier's servants to give him such reasonable attention as the circumstances permit; and if they know, or should know, that he is too ill to remain on the train with safety, it is their duty, if practicable, to remove him and place him in the hands of someone who can look after him. Middleton v. Whitridge, 213 N.Y. 499, 108 N.E. 192. See also Alabama Great Southern R. Co. v. Alsup, 5 Cir., 101 F.2d

175, 176, 177. As to whether there may be evidence from which a jury may find that an omission of duty which appellee owed deceased was the proximate cause of death, see Middleton v. Whitridge, 213 N.Y. 499, 513, 108 N.E. 192. From the foregoing, it is our conclusion that appellant's petition stated a cause of action against appellee railroad company under which, upon sufficient proofs, relief can be granted, and that, accordingly, appellant is entitled to a trial of the cause on its merits.

The judgment of the district court is, therefore, reversed and the case remanded for further proceedings in accordance with this opinion.